IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AYERS REALTY CO., L.L.C., T/d/b/a NORTHEAST VETERINARY REFERRAL HOSPITAL | : <br> : Case No. 3:12-CV-2109 |
| Plaintiff, | : |
| v. | : Honorable Richard P. Conaboy |
| SELECTIVE INSURANCE COMPANY OF SOUTHEAST | : <br> : |
| Defendant. | : <br> : |

_____

Memorandum

The Court confronts here cross-motions for summary judgment by Plaintiff Ayers Realty Company ("Plaintiff") and Defendant Selective Insurance Company of Southeast ("Selective"). The parties agree that the sole issue for this Court's determination is whether Plaintiff's property is an "elevated" or "non-elevated" building in the context of the regulations promulgated by the Federal Emergency Management Agency (FEMA). These motions have been fully briefed (Docs. 13, 16, 18 and 21) and this case is now ripe for disposition.

**I.   Factual Background.**

This case arises from flood damage at Plaintiff's premises in the Borough of Plains, Luzerne County, Pennsylvania on September 8, 2011. (Doc. 1, p. 9). Plaintiff submitted a Proof of Loss related to that flood in the amount of $53,068.37 and Selective, the issuer

1

of a General Property Standard Flood Insurance Policy (hereinafter "SFIP") pursuant to the National Flood Insurance Act of 1968 (hereinafter "NFIA") (42 U.S.C. § 4001, et. seq.), paid Plaintiff's claim in full.  Selective paid the claim due to its understanding that the premises was a "non-elevated" building.  (Doc. 14, ¶ 9; Doc. 19, ¶ 9).  Selective had set the premium for coverage on the premises based upon Plaintiff's representation that the premises was "a slab on grade non-elevated building." (Id.)  (Doc. 14-1, pp. 4 & 21-22).  After paying the claim, Selective inspected the property in question and determined that, due to its manner of construction, Plaintiff's property had been improperly rated as a "non-elevated building" pursuant to the Federal Emergency Management Agency ("FEMA") regulations. [1]  After making this determination, Selective re-rated the property as an "elevated building".  (Doc. 14, ¶ 25; Doc. 19, ¶ 25).  This revised designation limited the amount of insurance Plaintiff could prospectively obtain on any property damaged in the lowest floor of the premises.

After Selective re-rated the property, Plaintiff brought a Declaratory Judgment action in the Luzerne County Court of Common Pleas seeking a judicial declaration that the building was "non-elevated", a declaration that would require Selective to once again

---

[1] FEMA is charged with administering the NFIA.  See 42 U.S.C. § 4011 and 44 C.F.R. §§ 59.1-77.2.

rate the property under the classification in force at the time the flood damage occurred.  Selective then removed the case to this Court on diversity grounds pursuant to 28 U.S.C. § 1441.

**II.  Summary Judgment Standard.**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court [] that

3

there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Id. at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  Anderson, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**III. Applicable Law.**

Plaintiff's Motion for Summary Judgment is largely predicated on the mistaken notion that the substantive law of Pennsylvania should apply to this matter.  Plaintiff urges this Court to find that certain alleged ambiguities in FEMA's regulations concerning what constitutes an "elevated building" and "non-elevated building" should result in a decision by this Court that, as the drafter of an insurance contract, Selective should be required to rate Plaintiff's property as Plaintiff prefers under principles of Pennsylvania contract case law.

4

Plaintiff's reasoning is flawed in two ways.  First, it is well-settled that the interpretation of a SFIP is made with resort to federal common law.  Linder & Associates, Inc. v. Aetna, 166 F.3d 547, 550 (3d. Cir. 1999).  Second, while Selective, in its capacity as a "Write Your Own Program Company" (WYO Company) participant in the NFIP, drafted the contract in question, it did so in accord with the express requirements FEMA has promulgated for SFIP's pursuant to its rule making authority.  Suopys v. Omaha Property & Casualty Co., 404 F3d. 805, 807 (3d. Cir. 2005). These rules are codified at 44 C.F.R. Pt. 61, App. A(2).  FEMA's rules regarding the content of SFIP's are to be strictly construed. As the Third Circuit Court of Appeals has explained:

> Because any claim paid by a WYO Company is a direct charge to the United States Treasury, strict adherence to the conditions precedent to payment is required. Federal Crop. Ins. Corp., v. Merrill 332 U.S. 380, 384-85; 68 S.Ct. 1; 92 L.Ed. 10 (1947) (holding that insured must strictly comply with all terms and conditions of federal insurance policy and recognizing duty of courts to observe conditions defined by Congress for charging the public treasury); Van Holt, 163 F.3d at 165; Flick v. Liberty Mutual Ins., Co., 205 F.3d 386 (9th Cir.), cert. denied, 531 U. S. 927, 121 S.Ct. 305, 148 L.Ed. 2d. 245 (2000)(strict compliance applied to policies written by WYO Companies under the NFIP because flood loss claims are paid from the United States Treasury).

Suopys, supra, at 809.

Of course, "standard insurance law principles" must be used to construe the SFIP and the SFIP is interpreted in accord with its plain, unambiguous meaning and in such manner that its

interpretation should be uniform throughout the country and that its coverage should not vary from state to state.  Linder, supra, at 550.  While ambiguities in a SFIP policy are strictly construed against the insurer, we must give effect to the "[c]lear policy language", and refrain from "tortur[ing] the language to create ambiguities."  Id. (Citing Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d. Cir. 1998). Finally, disputes concerning the coverage of a SFIP policy are determined with respect to the way the covered property was situated on the date of loss.  Linder at 551.

**IV.  Discussion.**

While the Plaintiff has provided a wealth of factual detail regarding how the initial application for WYO coverage came to be written, why the Plaintiff's architect initially characterized the insured premises as an "elevated building", and why that architect subsequently changed his opinion that the structure was an "elevated building" (see Doc. 17, p. 7-12), these opinions are immaterial to the Court's decision.  The same thing is true of Defendant's representation (Doc. 14, p. 33) that FEMA has advised Selective that the Plaintiff's building is an "elevated building". It is hardly news that FEMA believes that it had a sound reason for re-rating the Plaintiff's property.  Because controlling case law requires the Court to decide this case by resort to FEMA's regulations, this Court much reach its determination with resort to what these regulations actually provide.  The opinions of

6

architects, engineers and unidentified FEMA personnel are irrelevant unless the Court concludes that FEMA's regulations do not clearly reveal whether the building in question may appropriately be characterized as "elevated".

An "elevated building", according to FEMA's definition, is: "...for insurance purposes, a nonbasement building which has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns. See 44 C.F.R. § 59.1 subpart A-Definitions. Because the definition requires that an "elevated building" have no "basement", FEMA, perhaps to avoid interpretive problems, has also defined "basement" as "any area of the building including any room or sunken portion of a room, having its floor below ground level (subgrade) <u>on all sides</u>." 44 C.F.R. Pt. 61, App. A(2), Art. (B)(5)(emphasis supplied). Thus, FEMA's definitions clearly require that for a building to be properly classified as "elevated", it must not have a basement, that is it must not have a room that is "below grade on all sides". It is equally clear that another indispensable element of an "elevated building" is that some portion of its lowest level must be raised above ground level."

Plaintiff has admitted that the lower level of the structure in question "was designed and engineered into the sloping hillside". (Doc. 17, ¶ 6). In addition to that, the photographs of the structure demonstrate beyond doubt that, while the lower

7

level of the structure is substantially below grade along most of the length of both its east and west sides, it is at grade on its north and south sides. (Doc. 14-1, Ex. C at 15-16). These photographs also demonstrate that substantial portions of the structure's east and west walls are "raised above ground level by foundation walls". Given Plaintiff's admission that the structure "was designed and engineered into the hillside" and the clear visual evidence provided by the photographs referenced above, the Court can only conclude that the building in question (a) lacks a "basement" as defined by the applicable FEMA regulations and (b) meets the remaining requirement of an "elevated building" because portions of the lowest floor are raised above grade by foundation walls.  Thus, both essential elements of FEMA's definition of an "elevated building" are present.

Despite the clear result compelled by the unambiguous FEMA definitions of "basement" and "elevated building", Plaintiff argues that a May 11, 2011 FEMA update to its Flood Insurance Manual (Doc. 14-2, Exh. F) that contains illustrations of "slab on grade buildings" (Diagram 1) and "buildings elevated on full-story foundation walls" (Diagram 7) requires our determination that Plaintiff's building more closely resembles Diagram 1.[2]  Buildings like that depicted on Diagram 1 would be entitled to the expanded

---

[2] While Plaintiff argues that its structure is more akin to Diagram 1 than Diagram 7, its principal Douglas Ayers, has acknowledged that the building does not resemble the one depicted on Diagram 1.  (Doc. 21-4 at 10).

insurance coverage Plaintiff seeks.

A close examination of the two diagrams in question makes Selective's argument that the building is "elevated" even stronger. First, even a cursory glance reveals that Diagram 1 clearly depicts a building with its lowest floor entirely "on grade". [3] As previously explained, a significant portion of the lowest floor of Plaintiff's building is below grade. Second, Diagram 7 clearly depicts a building, like the building in question, that has a lower level partially on grade and partially below grade. Finally, the description accompanying Diagram 7 states: "The principal use of this building is located in the elevated floors of the building." Because Plaintiff has acknowledged that, at the time of the flood, the lower level of the building was to be used for future expansion (Doc.21-4 at 8), it is apparent that the principal use of the building was located in the elevated floor, another hallmark of the building depicted in Diagram 7. For these reasons, the Court must conclude that no reasonable fact finder could conclude that Plaintiff's building more closely resembles Diagram 1 than Diagram 7 and to make such a determination would "torture the language of

---

[3] Plaintiff makes much of the fact that the text accompanying Diagram 1 indicates that a "distinguishing feature" of a Diagram 1 structure is that its "bottom floor is at or above ground level on at least one side.*" While it is true that Plaintiff's structure meets the literal terms of this description, Plaintiff fails to note that the * at the end of the description alludes to FEMA's definition of a basement. This should alert the reader to the fact that, if a structure is at or above ground level on even one side, it does not have a basement and, therefore, must be in the realm of the "elevated building" according the FEMA's regulations. See discussion at 5-6 ante. The totality of Diagram 1 simply does not resemble Plaintiff's building in multiple ways.

the policy" as proscribed by Linder and Selko, supra.

**V.  Conclusion.**

In light of the applicable FMEA regulations and the illustrations in FEMA's Flood Insurance Manual, the building in question must, as FEMA contends, be characterized as an "elevated building". Consistent with this conclusion, the Court finds that Selective acted properly in re-rating the building.  An Order reflecting these determinations will be filed contemporaneously herewith.

BY THE COURT

S/Richard P. Conaboy  
Honorable Richard P. Conaboy

Dated: February 28, 2014